RECEIPT # 59126
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 10383 DPW

| | |
|---|---|
| WHEATON ELECTRICAL SERVICES RETIREMENT 401K PROFIT SHARING PLAN, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>SONUS NETWORKS, INC., HASSAN AHMED and STEPHEN J. NILL,<br><br>Defendants. | Civil Action No.<br><br>MAGISTRATE JUDGE Bowler<br><br>FEDERAL SECURITIES<br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

Plaintiff, individually and on behalf of all other persons similarly situated, by its undersigned attorneys, for its complaint, alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon the investigation made by and through its attorneys, which investigation included, among other things, a review of Securities and Exchange Commission ("SEC"), filings by Sonus Networks Communications International, Inc. ("Sonus Networks" or the "Company"), press releases and other public statements issued by the Company, securities analysts' reports about the Company and media reports about the Company.

## NATURE OF ACTION

1.  This is a securities class action on behalf of public investors who purchased the securities of Sonus Networks during the period from April 9, 2003, through February 11, 2004, both dates inclusive (the "Class Period"). Named as defendants are the Company and certain of its senior executive officers and directors.

2.  Throughout the Class Period, the Sonus Networks' revenue and earnings results were artificially inflated through accounting chicanery in violation of Generally Accepted

Accounting Principles ("GAAP"). In essence, the Company improperly booked revenue from its sales. The Company intentionally prematurely recognized revenue on the sale of its telephone-network equipment.

3. Plaintiff and other class members were unaware of this fraudulent scheme until February 11, 2004, when Sonus announced it may have to restate results for 2003 and earlier because sales had been prematurely recorded. The Company also announced a further delay in the release of its fourth quarter and year-end results.

4. Following the news reports of a possible restatement, Sonus Networks' common stock closed at $5.39, on February 12, 2004, down $2.11, or 28%, from its close of $7.50 on February 10, 2004. During the Class Period, Sonus Networks common stock traded as high as $9.91.

5. While plaintiff and Class members were injured as a result of these false and misleading financial reports, Company issued over $60 million of its stock to the public as a secondary offering. In addition, company insiders made over $2 million in insider stock sales while knowing the actual condition of the Company.

6. Plaintiff seeks redress under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. 240.10b-5.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78aa, and 28 U.S.C. §1331.

8. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. 240.10b-5.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts and transactions constituting the violations of law alleged herein, including the preparation, issuance, and dissemination of materially false and misleading statements to the investing public, occurred in this District.

10. In connection with the acts, conduct and other wrongs alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

## THE PARTIES

### Plaintiff

11. Plaintiff purchased shares of Sonus Networks common stock during the Class Period as set forth in the accompanying certification and has been damaged as a result of defendants' conduct as described herein.

### Defendants

12. Defendant Sonus Networks is incorporated in the state of Delaware and maintains its principal place of business at 5 Carlisle Road, Westford, MA 01886. Sonus Networks provides voice infrastructure products. The Company's hardware and software enables customers to deploy an integrated, packet-based network carrying both voice and data traffic. Sonus markets and sells its products to service providers, including long distance carriers, wholesale carriers,

Internet service providers, and cable operators.

        13.    The defendants listed below served, during the Class Period, as senior officers and/or directors of Sonus Networks:

        (a)    Hassan Ahmed ("Ahmed"), President, Chief Executive Officer and Director;

        (b) Stephen L. Nill ("Nill"), Chief Financial Officer, Vice President of Finance and Administration and Treasurer.

Defendants Ahmed and Nill are referred to collectively herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Fraudulent Scheme

        14.    Sonus Networks represented that its revenue recognition practices were consistent with G.A.A.P. As set forth in its Form 10-Q dated May 9, 2003, the Company's recognized revenue from sales as follows:

> *(e) Revenue Recognition*
> Sonus recognizes revenue from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, Sonus recognizes revenue when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, Sonus uses the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the arrangement. Service revenue is recognized as the services are provided. Revenue from maintenance and support arrangements is recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenue. Warranty costs are estimated and recorded by Sonus at the time of product revenue recognition.

        15.    Through the Class Period, the Company recognized revenue in violation of GAAP and its own revenue recognition policy. Specifically, the Company knowingly booked the revenue

4

prematurely. The revenue was improperly booked to facilitate two common stock offerings that the Company executed during the class period. The offerings netted the Company almost $192 million.

**The Materially False and/or Misleading Statements and Omissions**

18.  On April 9, 2003, the opening of the Class Period, the Company issued a misleading press release detailing first quarter earnings for 2003. The press release states in pertinent part:

> Revenues for the first quarter of fiscal 2003 were $16.0 million compared with $12.7 million in the fourth quarter of fiscal 2002. Net loss for the first quarter of fiscal 2003 was $4.4 million or $0.02 per share compared with a net loss for the fourth quarter of fiscal 2002 of $12.8 million or $0.07 per share. Revenues for the first quarter of fiscal 2002 were $21.2 million and the net loss for the first quarter of fiscal 2002 was $16.2 million or $0.09 per share."Our financial results for the first quarter reflected good progress toward our business objectives," said Hassan Ahmed, president and CEO, Sonus Networks. **"We grew our revenues 27 percent over last quarter, and by continuing to manage our business with precision**, we further narrowed our net loss. In Q1, we also continued to add new customers around the globe and made important additions to our product family."

19.  On April 22, 2003, the Company issued a press release announcing the Company's sale of 20 million shares of common stock raising over $60 million. The press release states in pertinent part:

> Sonus Networks, a leading provider of voice infrastructure solutions for the new public network, today announced that it has completed a public offering of 20 million shares of Common Stock at a per share price of $3.05. The offering was made under an effective registration statement.

20.  The Company filed a prospectus with the SEC for this offering on the same day.

21.  On May 9, 2003, the Company filed its Form 10-Q for the first quarter of 2003 with the SEC. The document was signed by defendants Nill and Ahmed, and reiterated the foregoing results.

5

22. On July 10, 2003, the Company issued a misleading press release detailing second quarter earnings for 2003. The press release states in pertinent part:

> Revenues for the second quarter of fiscal 2003 were $21.4 million compared with $16.0 million for the first quarter of fiscal 2003 and $21.3 million for the second quarter of fiscal 2002. Net loss for the second quarter of fiscal 2003 was $3.2 million or $0.01 per share compared with a net loss for the first quarter of fiscal 2003 of $4.4 million or $0.02 per share and a net loss of $17.8 million or $0.09 per share for the second quarter of fiscal 2002.
>
> Revenues for the first six months of fiscal 2003 were $37.4 million compared with $42.5 million in the same period last year. Net loss for the first six months of fiscal 2003 was $7.6 million or $0.04 per share compared with a net loss for the first six months of fiscal 2002 of $34.0 million or $0.18 per share.
>
> **"We are pleased with the progress that we made in the second quarter, particularly with our 33% sequential revenue growth,"** said Hassan Ahmed, president and CEO, Sonus Networks. "We executed across all areas of the business broadening and strengthening our customer base, expanding our leading product offering, bolstering our balance sheet and advancing our drive to profitability."

23. On August 13, 2003, the Company filed its Form 10-Q for the second quarter of 2003 with the SEC. The document was signed by defendants Nill and Ahmed reiterated the foregoing results.

24. On September 23, 2003, the Company issued a press release announcing the Company's sale of 17 million shares of common stock raising almost $132 million. The press release states in pertinent part:

> Sonus Networks, a leading provider of carrier packet voice infrastructure solutions, today announced that it has completed a public offering of 17 million shares of Common Stock at a per share price of $7.75 less applicable underwriter discounts. The offering was made under an effective registration statement.

25. The Company filed a prospectus with the SEC for this offering on September 24, 2003.

26. On October 8, 2003, the Company issued a misleading press release detailing third quarter earnings for 2003. The press release states in pertinent part:

> Sonus Networks, Inc., a leading provider of carrier packet voice infrastructure solutions, today reported its financial results for the third quarter ended September 30, 2003 in accordance with U.S. generally accepted accounting principles (GAAP).
>
> Revenues for the third quarter of fiscal 2003 were $28.6 million compared with $21.4 million for the second quarter of fiscal 2003 and $7.4 million for the third quarter of fiscal 2002. Net income for the third quarter of fiscal 2003 was $1.2 million or $0.01 per diluted share compared with a net loss for the second quarter of fiscal 2003 of $3.2 million or $0.01 per diluted share and a net loss of $21.6 million or $0.11 per diluted share for the third quarter of fiscal 2002.
>
> Revenues for the first nine months of fiscal 2003 were $66.0 million compared with $49.9 million in the same period last year. Net loss for the first nine months of fiscal 2003 was $6.4 million or $0.03 per diluted share compared with a net loss for the first nine months of fiscal 2002 of $55.7 million or $0.30 per diluted share.
>
> **"This was a strong quarter for Sonus Networks, our fourth consecutive quarter of revenue growth," said Hassan Ahmed, president and CEO, Sonus Networks. "Our revenues grew 34% sequentially to $28.6 million, reflecting increased market demand for packet telephony and the expanding number of customers who have adopted Sonus' solutions.** We achieved an important milestone in reporting our first quarterly profit on a GAAP basis. Additionally, we bolstered our balance sheet to capitalize on the opportunity ahead, adding $126 million to our cash and marketable securities through a common stock offering in September."

27. On November 10, 2003, the Company filed its Form 10-Q for the third quarter of 2003 with the SEC, reiterating the foregoing results. The document was signed by defendants Nill and Ahmed.

## THE TRUTH BEGINS TO EMERGE

28. On January 20, 2004, Sonus issued a press release announcing it was delaying the release of its fourth quarter earnings and its financial results for the fiscal year 2003. The press release states in pertinent part:

> Sonus Networks today postponed the release of its Q4 and full year 2003 financial results pending the completion of its 2003 audit. Upon completion of the audit, the Company will reschedule the conference call and provide further details.

29. The true reason for the delay was made public in a press release issued on February 11, 2004. The press release states in pertinent part:

> Sonus Networks today provided additional information regarding the delay in reporting its fourth quarter and full fiscal year financial results for the year ended December 31, 2003. **In connection with the year-end audit, Sonus Networks and its independent auditors have identified certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts, which may affect the Company's 2003 financial statements and possibly financial statements for prior periods.**
>
> The revenue issues identified relate to the proper timing of recognizing revenue from certain customer transactions, and not whether the sales can be recorded as revenue. For the customer transactions under review, the products have been delivered, customers are using the products in their networks and Sonus Networks has either received payment or is receiving payment for the products in the ordinary course. The Company is reassessing the proper periods in which revenue should be recognized for these transactions. Revenue or deferred revenue in periods previously reported could increase, decrease or remain unchanged in those periods as a result of this reassessment.
>
> At this time, Sonus Networks cannot provide an anticipated date for the completion of its review or the year-end audit, or for the rescheduling of the release of its fourth quarter and fiscal year results for the year ended December 31, 2003.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased the securities of the Company between April 9, 2003, and February 11, 2004, inclusive (the "Class"). Excluded from the Class are defendants, officers and directors of the Company, members of their immediate families and the heirs, successors or assigns of any of the foregoing.

31. The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to the plaintiff at this time and can only be ascertained through appropriate discovery, the plaintiff believes there are, at a minimum, thousands of members of the Class who purchased common stock of the Company during the Class Period. During the Class Period, the Company had hundreds of millions of shares of its common stock outstanding. The Company's common stock trades on the NASDAQ under the symbol "SONS."

   32.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(1) whether defendants engaged in acts or conduct in violation of the federal securities laws as alleged herein;

(2) whether defendants participated in and pursued the common course of conduct complained of herein;

(3) whether the Company's public statements disseminated to the investing public and to the members of the Class misrepresented material facts about the Company's revenues and earnings;

(4) whether defendants acted knowingly or recklessly in making materially false and misleading statements, or in failing to correct such statements upon learning that they were materially false and misleading;

(5) whether the market prices of the Company's securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

(6) whether the members of the Class have sustained damages

9

and, if so, what is the proper measure of damages.

33. Plaintiff's claims are typical of the claims of the members of the Class, as plaintiff and members of the Class sustained damages arising out of defendants' wrongful conduct in violation of federal law as complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

> (1) defendants made public misrepresentations or failed to disclose material facts during the Class Period;
>
> (2) the omissions and misrepresentations were material;
>
> (3) the common stock of the Company traded on the NASDAQ, an efficient market;
>
> (4) the market reacted to public information disseminated by the Company, and the Company was followed and reported on by

            various securities analysts and brokerage firms;

(5)      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(6)      plaintiff and the members of the Class purchased their stock between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37.    Based upon the foregoing, plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLAIMS FOR RELIEF

### COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

38.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

39.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection

with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (a) conceal the adverse facts concerning the Company's operations, particularly with respect to its financial accounting and reporting; (b) artificially inflate and maintain the market price of the Company's securities; and (c) cause plaintiff and the other members of the Class to purchase the Company's securities at inflated prices.

40. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the press releases described above, including statements made to securities analysts and the media that were designed to influence the market for the Company's securities. Such releases were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company's finances and business prospects.

41. By virtue of their positions at the Company, the defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive plaintiff and the other members of the Class, or, in the alternative, the defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to them. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, the defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

42. Information showing that defendants acted knowingly or with reckless

disregard for the truth is peculiarly within defendants' knowledge and control. As senior managers and/or directors of the Company, the defendants, had knowledge of the details of the Company's internal affairs.

43.     Because of their positions of control and authority, the defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the defendants had a duty to disseminate timely, accurate, and truthful information with respect to the Company's businesses, operations, future financial condition and future prospects.

44.     As a result of the dissemination of the aforementioned false and misleading statements, the market price of the Company's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company's business and financial condition which were concealed by defendants, plaintiff and the other members of the Class purchased the Company's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants and were damaged thereby.

45.     Had plaintiff and the other members of the Class known the truth, they would not have purchased said securities or would not have purchased them at the inflated prices that were paid. At the time of the purchases by plaintiff and the Class, the true value of the Company's securities was substantially lower than the prices paid by plaintiff and the other members of the Class.

46.     By reason of the conduct alleged herein, defendants knowingly or recklessly,

directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10-5 promulgated thereunder.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

47.  Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.  During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, the Individual Defendants knew the adverse non-public information about the Company's business operations and false statements.

49.  As officers and/or directors of a publicly traded company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and business operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

50.  Because of their positions of control and authority as senior officers and/or directors of the Company, they were able to, and did, control the contents of press releases which the Company disseminated in the marketplace during the Class Period concerning the Company's business operations and financial condition. Throughout the Class Period, the Individual Defendants exercised power and authority to cause the Company to engage in the wrongful acts complained of

herein. Each of the Individual Defendants, therefore, were a "controlling person" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20 of the Exchange Act for the violations of the Company.

WHEREFORE, plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A. declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure and plaintiff to be a proper class representative;

B. awarding plaintiff and the Class compensatory damages, together with appropriate prejudgment interest at the maximum rate allowable by law;

C. awarding plaintiff and the Class their costs and expenses for this litigation, including reasonable attorneys' fees and other disbursements; and

D. awarding plaintiff and the Class such other and further relief as may be deemed just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Boston, MA
      February 25, 2004

                              Respectfully submitted,


*[signature]*

**SHAPIRO HABER & URMY LLP**
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
75 State Street
Boston, MA 02109
(617) 439-3939

**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP**
Marc I. Gross
Joseph Gentile
100 Park Avenue, 26th Floor
New York, NY 10017-5516
(212) 661-1100

**LAW OFFICES OF RICHARD J. VITA, P.C.**
Richard J. Vita (BBO # 510260)
77 Franklin Street, Suite 300
Boston, MA 02110
(617) 426-6566

*Attorneys for Plaintiffs*

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

1. I, Steven Wheaton, make this declaration on behalf of the Wheaton Electrical Services Retirement 401K Profit Sharing Plan, pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934.

2. I have reviewed the Complaint against Sonus Networks, Inc. and authorize its filing on my behalf.

3. I did not purchase my Sonus Networks securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4. I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz firm may exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5. The following are all of my transactions in Sonus Networks securities during the period from April 9, 2003, through February 11, 2004, the Class Period, as specified in the Complaint:

| Date | Purchase or Sale | Number/Type of Securities | Price of Securities |
|---|---|---|---|
| 01/14/04 | Purchase | 200 Shares | $8.08 |

6. During the three year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows (if none, leave blank):

7. I agree not to accept any payment for serving as a representative

party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed __2-24-04__, 2004, at __Waltham    Ma  02451__
                                    (Date)                         (City and State)

_____Stephen J Wheaton_____
(Signature)

Steven Wheaton